2GONZALES, Judge.
Sally A. Nungesser (Nungesser), in her individual capacity, sued James H. Brown (Brown), in his capacity as Commissioner of Insurance of the State of Louisiana, on February 8, 1995. Nungesser’s petition sought the issuance of a writ of mandamus ordering Brown to provide her with “a list of all cash investments on estates where the Louisiana Insurance Guaranty Association has claims, with type, interest rates and maturity dates noted.”
In her capacity as executive director of LIGA, Nungesser made a written request for the list on December 19, 1994. The request was presented to Allan Pursnell, an assistant commissioner of the Louisiana Department of Insurance. Prior to this request, Nungesser had made numerous oral and written requests for the list. None of the earlier requests constituted a public records request.
Nungesser did not receive any records, nor a written response to the December 19 request until January 31, 1995.
The written response stated that “the data you request does not exist in the form that you seek.” The letter further suggested that Nungesser “come to the Office of Receivership to see how the records are kept and what is available to satisfy your inquiry.” Upon receiving this response, Nungesser filed this petition, in her individual capacity, praying for a writ of mandamus ordering Brown to provide the records and information requested under the public records law.
Following a hearing on the petition, the trial judge ordered Brown to comply with Nungesser’s request and provide the records within 10 days. The trial judge found that Brown was arbitrary and capricious in failing to respond to the public records request and assessed $100.00 per day in civil penalties from December 19, 1994, until compliance. Brown appeals asserting that the trial judge erred in granting the writ of mandamus and in imposing civil penalties. On appeal, Brown also filed a peremptory exception raising the objection of no right of action pursuant to La.C.C.P. arts. 927(5) and 2163.
3EXCEPTION OF NO RIGHT OF ACTION
Brown asserts that Nungesser has no right of action and lacks standing to institute or prosecute this suit. Brown notes that in making all of the oral and written requests for the list, Nungesser acted in her official capacity as executive director of LIGA and in furtherance of the interests of LIGA. Because the request was made in her official capacity and on behalf of LIGA, Brown contends that LIGA was the proper party to institute the present action. He further asserts that because the record contains no directive from LIGA to Nungesser authorizing her to sue, his peremptory exception raising the objection of no right of action should be granted.
In opposing the exception, Nungesser asserts that the purpose of her public records request is immaterial to compliance and enforcement of the request. She contends that she has a right of action because La.R.S. *134 44:35 gives a right of action to “any person” denied their right under the public records law.
Louisiana Code of Civil Procedure article 927 is the source of the peremptory exception raising the objection of no right of action. The essential function of this objection is to raise the question of whether a remedy afforded by law can be invoked by a particular plaintiff. It relates specifically to the person of the plaintiff. Henry v. State, Department of Health and Human Resources, 435 So.2d 565, 566 (La.App. 3rd Cir.); writ denied, 441 So.2d 750 (La.1983); Bamber Contractors, Inc. v. Henderson Brothers, Inc., 345 So.2d 1212, 1214 (La.App. 1st Cir.1977).
In further defining the function of the objection of no right of action, Louisiana courts have stated that:
The want of interest raised by the exception relates primarily to whether the particular plaintiff falls as a matter of law within the general class in whose favor the law grants the cause of action sought to be asserted by the suit, with the factual evidence admissible being restricted as to whether this particular plaintiff does or does not fall within the general class having legal interest to sue upon the cause of action asserted.
Bamber, 345 So.2d at 1214-15 (quoting Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3rd Cir.1967)).
4These principles were applied by the third circuit in Henry v. State, Department of Health and Human Resources. In Henry, the defendant raised the exception of no right of action against the plaintiff, a succession administratrix, who sought to enforce the survival action originally instituted by the decedent as a tort action. After reviewing the applicable law, the third circuit noted that the administratrix had no right of action because she did not fall within one of the specific categories of beneficiaries described in La.C.C. art. 2315. Henry, 435 So.2d at 568. Accordingly, the third circuit affirmed the judgment of the trial court maintaining defendant’s exception of no right of action because the plaintiff did not fall within the general class of persons in whose favor the law grants a survival action.
In the present case, the right of action asserted by Nungesser is provided for in La.R.S. 44:35, which states, in part:
Any person who has been denied the right to inspect or copy a record under the provisions of this Chapter, either by a final determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, ... may institute proceedings for the issuance of a writ of mandamus ...
The law allows “any person” denied the right to inspect public records to institute mandamus proceedings. As previously noted by the Louisiana Supreme Court and more recently stated by this court, “the right of access to the public records is guaranteed by the constitution which must be construed liberally in favor of free and unrestricted access.” Elliott v. District Attorney of Baton Rouge, 664 So.2d 122, 125 (La.App. 1st Cir.1995); Title Research Corporation v. Rausch, 450 So.2d 933, 936 (La.1984). Unlike the administratrix in Henry who did not fall within one of the categories of persons entitled to maintain a survival action, Nungesser clearly falls within the category of persons entitled to maintain an action to enforce their rights under the public records law. Because the law provides a right of action to “any person,” we must deny Brown’s exception of no right of action. We now address the two assignments of error.
5ASSIGNMENT OP ERROR NUMBER ONE
In his first assignment of error, Brown asserts that the trial judge erred in ordering the writ of mandamus because there is no evidence that the “list” requested by Nungesser ever existed or that he breached a duty as custodian of the public records of the Department of Insurance.
According to Brown, the scheme of the public records law is premised on the supposition that the public record requested by a person of the age of majority is in fact a record or document which exists. He contends that a proper request must specifically describe the desired record and the court may only issue a writ of mandamus for the *135 production of existing records which were specifically requested and subsequently withheld by the custodian.
In applying these principles, Brown notes that Nungesser did request a specific record. However, he asserts that because the specific “list” requested by Nungesser did not exist, he did not breach his duty as custodian of records in failing to produce this “list.”
On the other hand, Nungesser contends that her request, which gave a reasonable description of the information sought, was a proper public records request. Nungesser asserts that Brown, as custodian of all records within his department, was required to locate and reproduce those documents in his possession or control which contained the requested information. She argues that Brown is not excused from complying with her request simply because there was no one-page “list” containing all of the requested information.
On December 19, 1994, pursuant to the public records law, Nungesser requested “a list of all cash investments on estates where [LIGA] has claims, with type, interest rates and maturity dates noted.” James B. Higgins, deputy commissioner, office of receiver-ships’ written response of January 31, 1995, stated that “the data you request does not exist in the form that you seek.” While the record reveals that a one-page “list” 6containing the requested information did not exist, the testimony of Charles Reiehman, chief financial officer and investment manager for the office of receivership, does establish the existence of certain reports which, when read together, satisfy Nungesser’s request.
Reichman gave the following testimony:
Q. Mi*. Reichman, If I wanted to know where the cash and cash equivalent investments of insolvent estates were, all insolvent estates, including those on which LIGA has claims, could I ascertain that information from the custodian bank’s report and the cash and cash equivalent report?
A. Yes, Ma’am.
Q. If I wanted to know the type of investment, the yield or the interest rate, and the maturity date of those investments, could I determine that from those two reports?
A. Yes, you could.
Q. So is the only problem in meeting Ms. Nungesser’s request that those records are not segregated by LIGA estates?
A. That’s true, and that it would take quite a lot of work to accumulate it for LIGA estates only; because it’s not — the source document is not prepared with that breakdown.
Q. But if you gave her a complete set of custodian bank reports and cash and cash equivalent reports, it would have the information she requested; it would also have the same information for non-LIGA estates, and she would have to go through and pick out which ones she was interested in; is that correct?
A. That’s true.
Brown contends that because Nungesser specifically requested a “list” of only LIGA estates, he was not required to produce the reports described by Mr. Reichman because the reports do not “list” the information requested by Nungesser. We do not agree with this contention. If a custodian of records could avoid compliance with a public records request which clearly describes the information sought simply because the request does not give the specific name or type of document requested, then the public’s right of access to public documents would be hollow indeed.
Access to public records is a fundamental right guaranteed by the constitution. La. Const, art. XII, § 3. This constitutional provision is liberally construed to provide free 7and unrestricted access to public records. Access can only be denied by a law which is specific and unequivocal. Any doubt concerning the public’s right to access to certain records must be resolved in favor of the public’s right to see. Title Research Corporation v. Rausch, 450 So.2d at 936.
The jurisprudence of this state clearly establishes that the fundamental right of access to the public records can only be restricted by a law which is specific and unequivocal. Id. Nothing in the public rec *136 ords law requires that, to be valid, a request must include the specific name or type of document requested. Where a requester gives a reasonable description of the information sought, the public’s fundamental right to free and unrestricted access to public records requires that the custodian produce those documents containing the requested information. The custodian cannot be excused from complying with the request merely because the information is kept in a format different from that which was requested or because the documents responsive to the request contain additional public information.
In the present case, Nungesser’s request for copies of public records gave a reasonable description of the information she sought. According to the testimony, the information requested was contained in the custodian bank reports and the cash and cash equivalent reports. These reports contained information concerning non-LIGA estates as well as the requested LIGA information. Because the requested information was readily available through the financial reports described by Reichman, Brown breached his duty as custodian of records by failing to provide copies of these reports.
In oral reasons for judgement, the trial judge ordered “the commissioner of insurance [to] comply with [Nungesser’s] request in the form she requested it....” In brief, Brown argues that it would be too burdensome to require his office to “create a list” containing the information sought by Nungesser. He contends that extensive manual labor would be necessary to compile the information contained in the various existing records to comply with Nungesser’s specific request.
8Although the trial judge stated that Brown should provide the requested information in the form in which Nungesser requested it, we do not interpret that ruling to mean that Brown create a new document. After a thorough review of the record, we conclude that the trial judge’s ruling merely ordered Brown to produce those reports, identified at trial by Reichman, which “listed” both LIGA and non-LIGA estate information.
For these reasons, we affirm the ruling of the trial judge ordering Brown to comply with Nungesser’s public records request.
ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, Brown asserts that the trial judge erred in imposing civil penalties for his failure to comply with a public records request, despite the fact that the public records law presupposes the existence of a specific public record.
Under the public records law, public records must be immediately presented to the person requesting them, unless the custodian promptly certifies, in writing, that the record is not immediately available because it is in active use and specifies a time for access within three days. La.R.S. 44:33(B). When a request is made, the custodian shall segregate the requested record from others so that the requester can reasonably view the record; if segregation is unreasonably burdensome or if the record is readily identifiable and segregation is unnecessary, the official must so state in writing and state the location of the requested record. La.R.S. 44:33(A). Any person denied their rights under the public records law, either by a final determination of the custodian or by the passage of five days, may institute proceedings to enforce their rights. La.R.S. 44:35(A).
While Brown has argued the inordinate burden that would be imposed if he were required to create a document containing only LIGA estate information, creation of a new document is not required to comply with Nungesser’s request. Brown need only produce copies of the existing reports which contain the requested information. Additionally, we note that in the written response, there was no claim that segregation of the reports from other public records was unreasonably burdensome; Brown merely argued that creation of 9a new document would be unreasonably burdensome.
When a request for copies of public records is made, the custodian has a legal duty to comply with the request or to make a written statement showing that compliance *137 would be unreasonably burdensome or expensive.[1] Nungesser requested copies of records containing information which was available in documents under the custody and control of Brown. Because Brown failed to provide copies of these documents or to provide a timely written response to the public records request, he failed to fulfill his legal duty as custodian of records.[2]
For these reasons, we affirm the trial judge’s ruling awarding civil penalties for Brown’s arbitrary and capricious failure to comply with Nungesser’s request.
DECREE
For the forgoing reasons, we DENY Brown’s peremptory exception raising the objection of no right of action and we AFFIRM the decision of the trial judge ordering Brown to comply with the public records request and assessing civil penalties of $100.00 per day. Costs of this appeal are assessed against Brown in the amount of $1070.19.
LOTTINGER, C.J., dissents and assigns reasons.

. See La.R.S. 44:31 and 44:33(A); Title Research Corporation, 450 So.2d at 937 (Requester may choose to obtain, from the custodian, a reproduction of the records.); La. Att’y. Gen. Op. No. 93-482 (August 25, 1993). (If segregation of requested records is unduly burdensome or expensive, the custodian may state so in writing and provide the location of the requested documents.)

. Brown's written response came approximately one and a half months after Nungesser’s request. Had this response been timely, we could have considered whether the offer to view the records in the office of receivership complied with La. R.S. 44:33(A)(2). However, we note that the offer to view the records was premised on Brown's conclusion that the records did not exist in the form requested rather than on the contention that segregation of the desired records would have been unreasonably burdensome or expensive.